VERMONT CENTRAL RAIL ROAD COMPANY *v.* GEORGE CLAYES.

By section four of the statute incorporating the Vermont Central Rail Road Company, certain persons named were constituted commissioners for receiving subscriptions to the capital stock of the company; and it was enacted as follows,—" And every person, at the time of subscribing, shall pay to the commissioners five dollars on each share for which he may subscribe, and each subscriber shall be a member of said company;" and it was farther enacted, that when one thousand shares should be subscribed, the commissioners might issue a notice for the stockholders to meet and elect directors. The defendant, after some other shares, but less than one thousand, had been subscribed for, subscribed for fifty shares, and, instead of paying to the commissioners, in money, five dollars upon each share at the time of subscribing, he gave them his promissory note for that amount, being two hundred and fifty dollars, which

was made payable to "The Commissioners of the Vermont Central Rail Road Company" on demand, for value received. This note was received from the commissioners by the corporation, upon its organization. And it was held, that the note was given upon sufficient consideration, and that it was a valid note in the hands of the corporation.

And it was also held, that an action might be sustained upon the note in the name of the corporation.

And it was also held, that the provision in the charter, that each subscriber should be a member of the company, and the fact that others had subscribed for stock previous to the defendant's subscription, were sufficient to show, that the corporation was *in esse* at the time of making the note, and so capable of taking the promise, through their agents, the commissioners, notwithstanding their right to organize was made to depend upon certain conditions, which were not fully complied with until after the note was executed.

Assumpsit upon a promissory note. Plea, the general issue, and trial by the court, November Adjourned Term, 1847,—Bennett, J., presiding.

On trial the plaintiffs gave in evidence the note declared upon, signed by the defendant, and dated July 18, 1845, and which was in these words,—" On demand for value received I promise to pay the Commissioners of the Vermont Central Rail Road Company two hundred and fifty dollars." The plaintiffs also gave in evidence a subscription list to the capital stock of the corporation, upon which it appeared the defendant had subscribed for fifty shares, and that other individuals had subscribed for stock, previous to the defendant, amounting in all to six hundred and thirty one shares. The plaintiffs also gave in evidence their act of incorporation, enacted by the legislature of Vermont in 1843, by the fourth section of which Charles Paine and others, who were named, were constituted commissioners to receive subscriptions to the capital stock of the corporation, and by which it was enacted as follows,—" And every person, at the time of subscribing, shall pay to said commissioners five dollars on each share for which he may subscribe, and each subscriber shall be a member of said company;" and by which it was also enacted, that when one thousand shares should be subscribed, or as soon thereafter as the commissioners should deem proper, a meeting of the stockholders might be called by the commissioners for the purpose of electing directors; and that, when

directors were so elected, the commissioners should deliver to them the books of subscription, and all sums of money deposited with them on all shares subscribed. It appeared, that the note in suit was given by the defendant in settlement for the first five dollars on each share subscribed by him, which was required, by the charter, to be paid at the time of subscribing, and that he paid nothing in any other form.

Upon these facts the county court rendered judgment in favor of the plaintiffs, for the amount of the note. Exceptions by defendant.

*C. Russell* for defendant.

1. It is insisted, that the note in suit is without consideration and of no validity. By the act of incorporation the duties of the commissioners are defined, and they must conform to its provisions; it does not authorize them to take notes, either to themselves, or to the corporation, but only to receive five dollars in money upon each share, at the time of subscribing; and if, acting under a statutory authority, the commissioners did not conform to its provisions, their acts are invalid. The subscribing for the stock, merely, without making the payment required, did not entitle the defendant to the stock; and it does not appear, that any stock was ever issued to him. *Union Turnp. Co.* v. *Jenkins,* 1 Caine's Cas. in Error, 86.

2. The plaintiffs cannot maintain this action. The note is, upon its face, the note of the defendant to the commissioners, and contains an absolute promise to pay the commissioners, and no other. If valid, the commissioners must be considered as having taken it to themselves, in lieu of money. The corporation had a legal right to require the money from the commissioners, and the commissioners took upon themselves to pay the corporation in money, and received the note for their own security and benefit. The words " Commissioners of the Vermont Central Rail Road Company" are merely descriptive of the persons named in the act; and therefore the persons composing the commissioners are the proper persons to sue upon the note.

The instrument cannot be deemed a promissory note to the corporation, for the reason, that, at the time it was executed, the one thousand shares, required by the statute as preliminary to organization, had not been subscribed. At that time it was wholly uncer-

tain, whether such a corporation would ever exist, so as to have capacity to enter into legal contracts. The corporation, then, cannot adopt such an instrument and declare upon it as a promissory note, but must declare upon it, if at all, as a special contract, alleging the consideration.

*Platt & Peck* and *A. Peck* for plaintiffs.

1. The provision in the act of incorporation does not make the actual payment of the five dollars indispensable to the validity of the subscription; it is directory, and is introduced for the benefit of the corporation, and may be waived. The note, being given for this sum, rests on good consideration; and as the plaintiffs have adopted the note, no question as to the power of the commissioners can arise.

2. The consideration for the note passed from the plaintiffs; and the rule is, that, if the principal and agent are named in the contract, and the consideration moves to the other party from the principal, the contract is with the latter, and he may sue upon it. The promise moves upon the consideration, and to the party, from whom it flows. *Whitelaw* v. *Cahoon*, 1 D. Ch. 295. *Arlington* v. *Hinds*, Ib. 431. *Piggott* v. *Thompson*, 3 B. & P. 147. *Gilmore* v. *Pope*, 5 Mass. 491. *Commercial Bank* v. *French*, 21 Pick. 486. 1 Am. Lead. Cas. 460. *Irish* v. *Webster*, 5 Greenl. 171. 1 Fairf. 441. *State* v. *Boies*, 2 Fairf. 474.

3. The defendant having pleaded the general issue only, the existence of the corporation is admitted. Besides, by the act of incorporation the company has a legal existence on the first subscription of stock, even before organization; and the note, being given for a consideration moving from the corporation, is, in legal effect, payable to the corporation,—especially as the *office* of commissioners, and not the persons, is named in the note.

The opinion of the court was delivered by

BENNETT, J. It is-claimed by the defendant, that the note now in controversy is *without consideration*. The defendant and others had signed an instrument, by which the subscribers agreed to take, and did take, the number of shares of the capital stock of the company, affixed to their respective names; and this defendant sub-

scribed for fifty shares of the stock. The note in suit was given for the first five dollars payable on each respective share, which, by the terms of the charter of incorporation, was to be paid to the commissioners at the time of the subscription. This, it is said, cannot constitute a sufficient consideration to sustain the note; but we think otherwise.

By the terms of the charter each subscriber becomes a stockholder and a member of the company; and the interest thereby acquired is a sufficient consideration to support an action for the amount subscribed, against the person subscribing, upon an express promise to pay the subscription. See Wordsworth on Joint Stock Companies, 317; 39 Law Lib. 85. *Worcester Turnp. Co.* v. *Wilson*, 5 *Mass.* 80. *Goshen Turnp. Co.* v. *Hurtin*, 9 Johns. 217. *Dutchess Cotton Manf. Co.* v. *Davis*, 14 Johns. 238. *Baltimore Turnp. Co.* v. *Barnes*, 6 Har. & Johns. 57. The defendant, having given his note for the first instalment to be paid upon his shares, cannot stand in any more favorable light, than if the action had been upon a subscription containing an express promise to pay the amount subscribed, as the same should be assessed. Though the corporation was not in point of fact organized at the time, when this defendant subscribed for his stock, yet his concurrence in obtaining and accepting the charter of incorporation, and thereby becoming himself a member of the corporation, raises a *mutuality* in his contract, and gives efficiency to his subscription.

We do not think, that the simple fact, that the commissioners accepted the note of the defendant in lieu of so much money, or, as the case finds, in *settlement* of the sum which was to have been paid upon the making of the subscription, can have the effect to give the defendant the right to repudiate his contract, or render it void for want of consideration. The corporation, having accepted this note as so much cash, could not certainly deny to the defendant the rights and privileges of a corporator.

The act does not, as in the case of bank charters, require the first instalment to be paid in specie; and no good reason is perceived, why it should. If it is paid in money's worth, every valuable purpose of a payment is answered; and we see no objection to the commissioners regarding the defendant's note as money's worth, if they saw fit. There is no pretence, that the public have in interest

Vt. Central Rail Road Co. *v.* Clayes.

in this subject, as in the case of monied corporations, which needs protection, and which might lead the court to require a strict performance of the provisions of the charter. There is no pretence, that this note was taken in bad faith, or to the injury of any of the corporators. It is quite another question, whether the corporation might have declined to have received this note of the commissioners, and required of them to have advanced the money, if they had thought proper. But we are not called on to pass upon any such question. Neither are we required to determine, what would have been the rights of the defendant, as a corporator, if the corporation had declined to receive the note from the commissioners; but, having received it, the defendant must be entitled to all the rights he would have had, if he had paid the money upon subscribing; and, upon the principle of *mutuality*, the note must be held valid in the hands of the corporation.

In the case of *The Union Turnp. Co.* v. *Jenkins,* 1 Caine 381, the act of incorporation required the payment of ten dollars on a share at the time of subscription. The defendant subscribed for two hundred and eighty shares, but paid nothing; neither was any thing demanded by the commissioners. It was in that case urged, that, as the first instalment of ten dollars was not paid, the contract was incomplete, and not obligatory upon the company, and consequently not binding upon the defendant. But the supreme court held, that this did not affect the validity of the subscription. Though the Court of Errors reversed that decision, (see 1 Caine's Cases in Error, 86,) it may well be questioned, which is the better opinion. But in the case now before us, not only was *the five dollars* on a share demanded by the commissioners at the time of subscription, but it was in fact paid to them in the defendant's note, which the case finds was received in *settlement* of the first instalment payable on the shares subscribed for. If the present note is not valid, the whole subscription is void, and neither party acquired any rights by means of it. This, we think, can hardly be contended for.

The more important question would seem to be, can the present plaintiffs maintain an action on this note? It is said, the corporation was not *in esse* at the time of making the promise. If this be so, it would be difficult to get over the objection. But the first section of the plaintiffs' act of incorporation declares in express terms,

that such persons, as shall thereafter become stockholders of said company, *are* constituted a body corporate, &c.   Though it is necessary, that every corporation should have corporators, yet we find by the fourth section of the act, that every subscriber for stock becomes *per se* a corporator; and by the subscription paper, which is made a part of the case, it appears, that there were several sub-scribers for stock prior to the defendant's becoming one.   Each subscriber for stock *per se* becomes a member of the corporation, and *all*, as fast as they subscribe, become *corporators*, under the provisions of the act.   To justify an organization of the corporation, certain things are made necessary; but in the eye of the law this corporation should be regarded *in esse* before they have the right to organize.   It is the statute, which creates the subscribers for stock a corporation, and not their organizing under it.   It is usual, in acts of incorporation, to designate the names of certain individuals as corporators; but that was not done in this instance.   As the act in-corporates all, that shall thereafter become stockholders, it may be taken, for the purpose of giving *vitality* to the charter of incorpora-tion, that the defendant, as well as other subscribers for stock, be-came such on the day the act of incorporation passed, although in point of fact they did not subscribe until some time subsequent. See *Chester Glass Co.* v. *Dewey*, 16 Mass. 94.   If this be not so, the charter must, at all events, have *vitality* from the time individ-uals became stockholders in point of fact, by an actual subscription; and this is sufficient for present purposes.

The note contains a promise, " to pay the commissioners of the Vermont Central Rail Road Company," two hundred and fifty dol-lars.   It is claimed, that this is a promise to pay the individuals, who were appointed the commissioners for receiving subscrip-tions for the company, and not a promise to the corporation, and that such individuals alone have the right of action.   Although it may be true, that, as to bills of exchange, the person named as payee has the right of action, and not the person who has the beneficial interest, and that it is to be determined upon the inspection of the bill alone, who has the right of action, or, in other words, who is the promisee, and although we should concede, that the same prin-ciple should apply to promissory notes, yet the important inquiry is, who is the payee, upon the face of this note?   Is it the Rail Road

Company, or the individuals who constituted the board of commissioners? The commissioners are not named in the note as individuals, but only referred to officially, as the commissioners of the "Vermont Central Rail Road Company." If the promise had been to A. B. and C., Commissioners of the Vermont Central Rail Road Co., the question would have been quite a different one from what is raised in this case.

I think the authorities well sustain the position, that where the principal is named in a bill of exchange, or promissory note, and the agent is not, except officially, — as a promise to pay "the cashier of the Bank of Burlington,"—the principal, who is named, is to be taken to be the promisee, rather than the agent, who is not named ; and this, too, upon the face of the instrument. In the case of the *New York African Society* v. *Varick et al.*, 13 Johns. 38, the bond was executed to the *standing committee* of that society; and it was claimed, that the society could not sustain an action on it; but it was held otherwise. So in *Bailey* v. *The Onondaga County M. Ins. Co.*, in error, 6 Hill 476, the bond was given to the *directors* of the company, to be paid to the *said directors, their successors and assigns*; and yet it was held, in legal effect, to be a bond to the company. In the case of *The Commercial Bank* v. *French*, 21 Pick. 486, the promise in the note was to pay "the cashier of the Commercial Bank, Boston, or his order ;" and the action was sustained on the note by the bank. See, also, the case of *Bank of United States* v. *Lyman et al.*, 20 Vt. 669, where this subject is ably and fully considered. Also, 1 Am. Lead. Cas., p. 461.

Our own courts have gone much farther than is necessary to go to sustain the present action, and that, too, in the case of promissory notes. In *Arlington* v. *Hinds*, 1 D. Ch. 431, the promise was " to pay Luther Stone, town treasurer, or his successors in office ;" and yet it was held, that the town of Arlington might maintain the action. In the case of *Bank of Manchester* v. *Slason*, 13 Vt. 334, the bill was indorsed thus, " pay to M. Clark, Esq., cashier ;" and yet, it appearing in evidence, that Clark was at the time cashier to the Bank of Manchester, and that this was the uniform mode of indorsing paper to banks, it was held, that the action was well brought in the name of the bank. It may be remarked, that in both

of these cases the agents are designated by name, as well as officially, and there is no designation of their principals, in either case, upon the face of the paper. In the case before us the commissioners are a part of the necessary machinery for getting this corporation into operation, and are *quasi* agents of the corporation, necessarily acting in their behalf, prior to an organization. We think, that, upon this note, the company are the proper persons to bring this action, and especially as it appears, that the consideration, for which the note was given, was stock subscribed for by the defendant. In effect, it is a promise to the corporation, through the commissioners.

No question was raised in the county court as to the existence of the plaintiffs as a corporation, and none has been raised in argument in this court, excepting whether they were *in esse* at the time the note was executed; and probably none could be raised, under the present pleadings.

The result is, the judgment of the county court is affirmed.